UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case Nos. 07-10090 and 07-20058 |
| ) | |
| MICHAEL AVANT, ) | |
| ) | |
| Defendant. ) | |

### ORDER AND OPINION

This matter is now before the Court on Defendant Michael Avant's *pro se* Motion for Compassionate Release and Amended Motion for Compassionate Release requesting a reduction in his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A). (Docs. 22 and 25). For the reasons set forth below, Defendant's Motions are DENIED.

#### BACKGROUND

Defendant was originally sentenced to 210 months of imprisonment for armed bank robbery in 1992. (D. 25 at 1). On May 4, 2007, he was released from prison and began serving his term of supervised release. *Id*. A few months after his release, he was arrested for bank robbery. *Id*. at 1-2. A petition to revoke his supervised release was filed in case 07-20058. *Id*. at 2.

Defendant pleaded guilty in both case 07-10090 and case 07-20058. *Id*. On February 14, 2008, this Court sentenced him to 168 months of imprisonment in case 07-10090, to run consecutive to the 36 months imposed on the revocation of supervised release in case 07-20058. (D. 28 at 2).

Defendant is currently incarcerated at FCI Otisville in Otisville, New York. (D. 25 at 2). His projected release date is February 3, 2022. *Id*.

1

On October 13, 2020, Defendant filed a *pro se* Motion for Compassionate Release. (D. 22). The Court appointed the Federal Public Defender (FPD) to represent him. On October 27, 2020, the FPD filed an Amended Motion for Compassionate Release on Defendant's behalf. (D. 25). On October 29, 2020, the Government filed its Response. (D. 28). This Order follows.

**LEGAL STANDARD**

Generally, the Court is statutorily prohibited from modifying a term of imprisonment once it has been imposed. *See* 18 U.S.C. § 3582(c). Several statutory exceptions exist, one of which allows the Court to grant a defendant compassionate release if certain requirements are met. *See* 18 U.S.C. § 3528(c)(1)(A).

Before filing a motion for compassionate release, a defendant is required to first request that the Bureau of Prisons (BOP) file a motion on his behalf. 18 U.S.C. § 3582(c)(1)(A). A court may grant a motion only if it was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id*.

A court may reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the court finds that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). The policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (iii) "the reduction is consistent with the policy statement." USSG § 1B1.13. The

policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons."

If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons." A chronic condition (*i.e.*, one "from which [the defendant] is not expected to recover") reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. USSG § 1B1.13, cmt. n.1(A)(ii)(1).

"The mere presence of COVID-19 in a particular prison cannot justify compassionate release—if it could, every inmate in that prison could obtain release." *United States v. Melgarejo*, 2020 WL 2395982, at *5 (C.D. Ill. May 12, 2020). Rather, "a prisoner [may] satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus." *Id*. at 5–6.

## DISCUSSION

### I.  Exhaustion of Administrative Remedies

Generally, the Court is statutorily prohibited from modifying a term of imprisonment once it has been imposed. *See* 18 U.S.C. § 3582(c). Several statutory exceptions exist, one of which allows the Court to grant a defendant compassionate release if certain requirements are met. *See* 18 U.S.C. § 3528(c)(1)(A). Since the enactment of the First Step Act, 18 U.S.C. § 3582(c)(1)(A), an inmate is allowed to file a motion for compassionate release after exhausting administrative

review of a BOP denial of the inmate's request for the BOP to file a motion or after waiting thirty days from when the request was received, whichever is earlier. 18 U.S.C. § 3528(c)(1)(A).

Defendant submitted requests for compassionate release to the warden on April 30, 2020 and May 21, 2020. (D. 22 at 3-4). The warden denied compassionate release on June 23, 2020. *Id*. at 5. The Government agrees that Defendant exhausted his administrative remedies. (D. 28 at 10). As such, the Court will address the Motion on the merits.

## I.     Eligibility for Compassionate Release

Defendant does not suffer from a pre-existing medical condition recognized by the CDC as increasing the risk of experiencing severe symptoms or death from COVID-19. (D. 25 at 5). Defendant argues that he could suffer more distress than others if he contracts the virus because he has chronic sinus issues and needs to use an inhaler to breathe easier. *Id*. at 5-6.

If an inmate has a chronic medical condition that has been identified by the CDC as elevating his or her risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of extraordinary and compelling reasons. USSG § 1B1.13, cmt. n.1(A)(ii)(I). Here, the Court finds that Defendant does not qualify for a sentence reduction because he does not suffer from a medical condition that places him at an increased risk if he contracts COVID-19. *See* Centers for Disease Control, *COVID-19, People with Certain Medical Conditions*, (Nov. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. The mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release. *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020). If it could, every inmate in that prison could obtain release. *Melgarejo*, 2020 WL 2395982, at *3. The pandemic does not even "warrant the release of

every federal prisoner with health conditions that makes him more susceptible to the disease." *United States v. Collins*, 2020 WL 2301217, at *2 (C.D. Ill. May 8, 2020).

Under certain scenarios, the presence of a serious and uncontrolled COVID-19 outbreak in a particular prison may be grounds constituting an extraordinary and compelling reason for compassionate release, such as where an inmate is over age 65 and suffers from health conditions that place him at great risk from COVID-19. *See Melgarejo*, 2020 WL 2395982, at *3; *United States v. Cabrera*, 2020 WL 2549941, at *4 (C.D. Ill. May 19, 2020); *United States v. Brooks*, 2020 WL 2509107, at *5-6 (C.D. Ill. May 15, 2020). Defendant admits that "FCI Otisville is not currently a hotspot for the spread of COVID-19." (D. 25 at 5). The Court acknowledges that this could change. Currently, three inmates and two staff members are positive for COVID-19; twenty-three inmates and fourteen staff members have recovered; and no deaths have occurred. *See* Federal Bureau of Prisons, *COVID-19 Coronavirus* (Nov. 23, 2020), https://www.bop.gov/coronavirus/.

Defendant is not in any of the high-risk groups associated with COVID-19 and FCI Otisville appears to be managing and containing the spread of the virus. Therefore, Defendant's Motion is DENIED because he failed to demonstrate extraordinary and compelling reasons warranting a reduction.

## CONCLUSION

Defendant's Motions for Compassionate Release [22], [25] are DENIED.

ENTERED this 23rd day of November, 2020.

                                                            s/ Michael M. Mihm
                                                            Michael M. Mihm

United States District Judge