UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 07-10090 |
| | ) |
| MICHAEL AVANT, | ) |
| | ) |
| Defendant. | ) |

## ORDER AND OPINION

This matter is now before the Court on Defendant Michael Avant's Second Motion for Compassionate Release requesting that his remaining time in the half-way house be converted to home confinement pursuant to 18 U.S.C. § 3582(c)(1)(A). (D. 32). For the reasons set forth below, Defendant's Motion is DENIED.

## Background

Defendant was originally sentenced to 210 months of imprisonment for armed bank robbery in the District of Oregon in 1992. (D. 32 at 1). On May 4, 2007, he was released from prison and began serving his term of supervised release. *Id*. A few months after his release, he was arrested for bank robbery in this district in case 07-10090. *Id*. A petition to revoke his supervised release was filed in case 07-20058. *Id*.

Defendant pled guilty in both case 07-10090 and 07-20058. *Id*. On February 14, 2008, this Court sentenced him to 168 months of imprisonment in case 07-10090 for bank robbery, to run consecutive to the 36 months imposed in case 07-20058 for violating his supervised release. *Id*. at 1-2.

Defendant was incarcerated at FCI Otisville in Otisville, New York until his release to The Oriana House, Inc. in Cleveland, Ohio on February 23, 2021. *Id*. at 2. His projected release date is February 3, 2022. *Id*.

On October 13, 2020, Defendant filed a *pro se* motion for compassionate release. (D. 25). The Court appointed the Federal Public Defender ("FPD") to represent him. The FPD filed an amended motion for compassionate release on his behalf. (D. 26). On November 24, 2020, this Court denied the motion because Defendant failed to demonstrate extraordinary and compelling reasons warranting a sentence reduction. (D. 29 at 5).

On May 17, 2021, Defendant filed another *pro se* motion for compassionate release, and this Court appointed the FPD to represent him. (D. 30). On May 21, 2021, the FPD filed a Second Amended Motion for Compassionate Release on Defendant's behalf, now requesting that Defendant's remaining time in the half-way house be converted to home confinement. (D. 32). On May 27, 2021, the Government filed its response. (D. 34). This Order follows.

**LEGAL STANDARD**

Before filing a motion for compassionate release, a defendant is required to first request that the Bureau of Prisons ("BOP") file a motion on his behalf. 18 U.S.C. § 3582(c)(1)(A). A court may grant a motion only if it was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf" or after thirty days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id*.

The compassionate release statute directs the court to make three considerations: (1) whether extraordinary and compelling reasons warrant a sentence reduction; (2) whether a reduction is consistent with the factors listed in 18 U.S.C. § 3553(a); and (3) whether a reduction

would be "consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1). The Sentencing Commission, however, has not updated its policy statements since the First Step Act came into effect. Prior to the passage of the First Step Act, federal judges were only able to release prisoners for compassionate release reasons upon motion by the BOP. *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020). The First Step Act gave judges the power to grant compassionate release on a prisoner's own motion provided that the prisoner first allowed the BOP to review the request and make a recommendation or thirty days had passed since the prisoner submitted his or her request to the BOP. *Id*. The Seventh Circuit determined that the most recent policy statements from the Sentencing Commission do not apply to prisoner-initiated motions because the guidelines only address those motions that were brought pursuant to a BOP motion. *Id*. at 1180. Accordingly, the Seventh Circuit held that "because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion. Any decision is 'consistent with' a nonexistent policy statement." *Id*. This Court is therefore not bound by the Sentencing Commission's analysis in § 1B1.13 or the application notes regarding the definition of "extraordinary and compelling reasons." *Id*. at 1181.

Despite the Seventh Circuit clarifying that courts are not bound by the Sentencing Commission's guidelines regarding compassionate release when an inmate brings the motion, the Seventh Circuit strongly suggested that those guidelines are still relevant to district courts' decisions. *Id*. at 1180. The Seventh Circuit explained that the guidelines provide a "working definition" of "extraordinary and compelling reasons" and cautioned that a judge who "strikes off on a different path risks an appellate holding that judicial discretion has been abused." *Id*. "In this way the Commission's analysis can guide discretion without being conclusive." *Id*. The Seventh Circuit further stated that it would "expect" district judges to give the BOP Director's analysis

3

regarding the prisoner's request "substantial weight, even though under the First Step Act the Director's views are not controlling." *Id*. Based on the available guidance from the Seventh Circuit, this Court will give great weight to the Sentencing Guidelines regarding motions for compassionate release even though they are not binding in this case.

If an inmate has a chronic medical condition that has been identified by the Centers for Disease Control and Prevention ("CDC") as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons." USSG § 1B1.13, cmt. n.1(A)(ii)(I). A chronic condition (i.e., one "from which [the defendant] is not expected to recover" reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. *Id*.

"The mere presence of COVID-19 in a particular prison cannot justify compassionate release—if it could, every inmate in that prison could obtain release." *United States v. Melgarejo*, 2020 WL 2395982, at *5 (C.D. Ill. May 12, 2020). Rather, "a prisoner [may] satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus." *Id*. at 5–6.

Finally, this Court is disinclined to grant a sentence reduction unless it determines that a defendant "is not a danger to the safety of any other person or to the community." *See* USSG § 1B1.13(2).

**DISCUSSION**

**I.    Exhaustion of Administrative Remedies**

Generally, the Court is statutorily prohibited from modifying a term of imprisonment once it has been imposed. *See* 18 U.S.C. § 3582(c). Several statutory exceptions exist, one of which allows the Court to grant a defendant compassionate release if certain requirements are met. *See* § 3528(c)(1)(A). Since the enactment of the First Step Act, an inmate is allowed to file a motion for compassionate release after exhausting administrative review of a BOP denial of the inmate's request for the BOP to file a motion or after waiting thirty days from when the request was received, whichever is earlier. *Id*.

Before filing his initial motion, Defendant submitted requests for compassionate release to the warden at FCI Otisville on April 30, 2020, and May 21, 2020. (D. 22 at 3-4). The warden denied compassionate release on June 23, 2020. *Id*. at 5. Here, Defendant argues that the Court's previous finding that he exhausted his administrative remedies should be sufficient for purposes of this Motion. (D. 32 at 3). The Government agrees that he exhausted his administrative remedies. (D. 34 at 3). As such, the Court will address the Motion on the merits.

**II.   Eligibility for Compassionate Release**

Defendant does not suffer from a pre-existing medical condition recognized by the CDC as increasing the risk of experiencing severe symptoms or death from COVID-19. (D. 32 at 3-4). Defendant argues that he could suffer more distress than others if he contracts the virus because he has chronic sinus issues and needs to use an inhaler to breathe easier. *Id*. at 4.

If an inmate has a chronic medical condition that has been identified by the CDC as elevating his or her risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of extraordinary and compelling reasons. USSG § 1B1.13, cmt. n.1(A)(ii)(I). Here, the

Court finds that Defendant does not qualify for a sentence reduction because he does not suffer from a medical condition that places him at an increased risk. *See* Centers for Disease Control, *COVID-19, People with Certain Medical Conditions*, (June 25, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. The mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release. *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020). If it could, every inmate in that prison could obtain release. *Melgarejo*, 2020 WL 2395982, at *3. The pandemic does not even "warrant the release of every federal prisoner with health conditions that makes him more susceptible to the disease." *United States v. Collins*, 2020 WL 2301217, at *2 (C.D. Ill. May 8, 2020).

Under certain scenarios, the presence of a serious and uncontrolled COVID-19 outbreak in a particular prison may be grounds constituting an extraordinary and compelling reason for compassionate release, such as where an inmate is over age sixty-five and suffers from health conditions that place him at great risk from COVID-19. *See Melgarejo*, 2020 WL 2395982, at *3; *United States v. Cabrera*, 2020 WL 2549941, at *4 (C.D. Ill. May 19, 2020); *United States v. Brooks*, 2020 WL 2509107, at *5-6 (C.D. Ill. May 15, 2020).

Defendant admits that "RRC Oriana House is [not] currently a hotspot for the spread of COVID-19." (D. 32 at 3).[1] The Court acknowledges that this could change. Currently, zero inmates and zero staff members are positive for COVID-19; two inmates and zero staff members have recovered; and no deaths have occurred. *See* Federal Bureau of Prisons, *COVID-19 Coronavirus* (June 25, 2021), https://www.bop.gov/coronavirus/.

---

[1] Defendant's Motion states that "RRC Oriana House is currently a hotspot," but given the context and the information included within the same paragraph and the one following, this Court believes that Defendant inadvertently left out the word "not" in his Motion.

Defendant is not in any of the high-risk groups associated with COVID-19, and RRC Oriana House appears to be managing and containing the spread of the virus. Therefore, Defendant's Motion is DENIED because he failed to demonstrate extraordinary and compelling reasons warranting a reduction.

**III.     The § 3553(a) Sentencing Factors**

Under the applicable policy statement, the Court must deny a sentence reduction unless it determines the defendant "is not a danger to the safety of any other person or to the community." USSG § 1B1.13(2). Additionally, the Court must consider the § 3553(a) factors, as "applicable," as part of its analysis. *See* 18 U.S.C. § 3582(c)(1)(A). The Court's consideration of the § 3553(a) factors further militates against early release for this Defendant.

Defendant was adjudicated delinquent at the age of fourteen based on a theft. PSR ¶¶26-30. After he committed an aggravated battery by pushing a teacher, his probation was revoked and he was sentenced to the Illinois Department of Corrections ("IDOC") – Juvenile Division. *Id*. Later, he was adjudicated delinquent based on a robbery he committed in Oklahoma. PSR ¶¶33-34. He was convicted of misdemeanor theft in 1984, burglary in 1986 and 1987, and robbery in 1987, for which he was sentenced to seven years in the IDOC. PSR ¶¶35-38. In 1992, he was sentenced to 210 months of imprisonment in the District of Oregon for two counts of armed bank robbery (case no. CR 91-731FR). (D. 33 at 1).

While on supervised release, Defendant committed a bank robbery in this district. *Id*. On July 2, 2007, Defendant and Turhan Walker entered the Commerce Bank in Normal, Illinois and began yelling at the bank employees. PSR ¶5. Defendant pointed a silver toy handgun at one of the employees, threatened to kill her, and demanded the "big money" from the bank vault. *Id*. at ¶6. After she opened the vault door, he ordered her to get on the ground while filled a bag with

$49,200 in cash. *Id*. at ¶7. Before fleeing the bank, Walker ordered the bank employees and customers to get into the vault. *Id*. Then, Walker and Defendant shut the door and fled the bank in a van. *Id*. During their escape, they caused a multi-vehicle accident resulting in injuries. *Id*. at ¶8.

Defendant pled guilty to bank robbery and was sentenced 168 months of imprisonment. (d/e 9/19/2007; D. 12). While in custody, Defendant has had disciplinary incidents for phone abuse in 2009 and use of drugs/alcohol in 2018, resulting in his loss of good time credit and privileges. (D. 33 at ¶11). Approximately seven months remain on Defendant's sentence. *Id*.

The U.S. Probation Office in the Northern District of Ohio found Defendant's release plan to reside with his wife in Ohio to be suitable. *Id*. at 2. Nonetheless, the Court finds Defendant's current sentence appropriate considering his criminal history, particularly those offenses committed while on supervised release. Accordingly, the Court finds that his early release would not be justifiable under the § 3553(a) factors because it would not reflect the seriousness of his criminal conduct, promote respect for the law, or provide just punishment.

## CONCLUSION

Defendant's *pro se* Motion for Compassionate Release [30] is MOOT and his Second Amended Motion for Compassionate Release [32] is DENIED.

ENTERED this 28th day of June, 2021.

s/ Michael M. Mihm
Michael M. Mihm
United States District Judge